CLERK'S OFFICE U.S. DISTRICT COURT AT ROANOKE, VA
FILED
9/30/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| PHILIP BRONSON SHAW,<br><br>Plaintiff,<br><br>v.<br><br>LAURENCE SHU-CHANG WANG, M.D.,<br><br>Defendant. | ) | Case No. 4:25-cv-00015<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. Thomas T. Cullen<br>United States District Judge |

---

Plaintiff Philip Bronson Shaw, a Virginia inmate, filed this action against Defendant Laurence Shu-Chang Wang, M.D. under 42 U.S.C. § 1983 and Virginia state law, alleging that Dr. Wang was deliberately indifferent to Shaw's serious medical needs, in violation of the Eighth Amendment, and was medically negligent in his treatment of Plaintiff. (*See* ECF No. 1.) Dr. Wang has moved for partial summary judgment on Shaw's Eighth Amendment claim, arguing that Shaw failed to properly exhaust his administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA") before filing his claim. (ECF No. 25.) The court deferred ruling on Dr. Wang's motion until additional discovery could be taken. (*See* ECF No. 31, at 2.) The court also referred the motion to United States Magistrate Judge C. Kailani Memmer for an evidentiary hearing and report and recommendation under Federal Rule of Civil Procedure 72(b). (*Id.*)

The parties have since completed additional discovery, appeared for the evidentiary hearing, and filed supplemental briefs. (*See* ECF Nos. 34, 46, 47.) Judge Memmer issued a report and recommendation recommending that the court grant Dr. Wang's motion for partial

summary judgment. (ECF No. 48.) This matter is now before the court are Shaw's objections to the report and recommendation (ECF No. 49). For the reasons set forth below, Shaw's objections will be overruled and Dr. Wang's motion for partial summary judgment will be granted.

## I. BACKGROUND

In his complaint, Shaw alleges that, in March 2023, while he was incarcerated at Green Rock Correctional Center, he experienced severe right hip and back pain after he sustained trauma to his back. (ECF No. 1 ¶¶ 6–27.) The pain began on March 9, 2023, and Shaw was first seen by the medical department at Green Rock two days later. (*Id.* ¶¶ 7–8.) He was given pain medication to manage his symptoms. (*Id.* ¶ 8.) By March 13, 2023, his back pain was so intense that he had to be transported to the medical department via wheelchair. (*Id.* ¶ 9.) Once there, he reported dark urine and an inability to eat. (*Id.*) Urinalysis revealed significant abnormalities, including leukocytes, protein, ketones, bilirubin, elevated urobilinogen, and blood in Shaw's urine. (*Id.*) Shaw alleges that these findings, appearing at the same time as his back pain, would have led a reasonable doctor to suspect possible muscular or spinal infection. (*Id.* ¶¶ 9–10.)

Dr. Wang was notified of Shaw's condition and ordered medications for him, including an intramuscular injection of Solu-Medrol. (*Id.* ¶ 11.) The morning of March 14, 2023, Shaw reported shaking and sweating through the night, but no additional action was taken to evaluate his symptoms. (*Id.* ¶ 12.) Two days later, Shaw was seen by nursing staff. (*Id.* ¶ 13.) The staff noted that Shaw was prescribed additional medication but that he needed to be seen by Dr. Wang and have a back x-ray. (*Id.*) Shaw continued to be seen by nursing staff between

March 16 and March 18, 2023, and continued reporting back pain and requiring wheelchair transportation. (*Id.* ¶ 14.) On those days, he reported his pain as varying from a seven out of ten, to ten out of ten. (*Id.*)

Shaw reported more pain on March 20, 2023. (*Id.* ¶ 15.) That day, he described his pain as sharp, throbbing, and constant, and he told medical staff that his pain was not relieved with pain medication or steroids. (*Id.*) Nurses gave him Tylenol and a balm. (*Id.*) The next day, Shaw had a fever of 99.9 degrees, a heartrate of 102, blood pressure of 132/79, and oxygen saturation of 97%. (*Id.* ¶ 16.) He described his hip pain as "terrible" and told staff he was unable to walk or stand. (*Id.*) He was given more oral pain medication after a nurse told him another shot "was not going to help," and he was referred to an "ortho." (*Id.*) Shaw's medical records indicate that Dr. Wang was notified and concurred with the treatment plan. (*Id.*) Later that day, Shaw's pain level varied from eight to ten out of ten, his skin was warm, and he experienced night sweats. (*Id.*)

Shaw's symptoms, including his fever, persisted throughout the next week. (*Id.* ¶¶ 17–22.) On March 22, 2023, his temperature and heart rate remained elevated, and he continued to report dark urine containing solids, along with swelling in his lower back. (*Id.*) Between March 24 and 25, he was still experiencing back pain, which he reported was radiating to his right leg. (*Id.* ¶ 19.) He also reported more blood in his urine and difficulty sitting and standing. (*Id.*) Another urinalysis on March 25 confirmed leukocytes, nitrates, protein, ketones, bilirubin, and blood in his urine. (*Id.* ¶ 20.) On March 27 and 28, his fever and elevated heart rate persisted, he reported swelling in his right lower body, and he voiced his desire to "see MD."

(*Id.* ¶¶ 21–22.) Dr. Wang never personally evaluated or treated Shaw for his hip pain and related conditions, however, nor did he refer Shaw offsite for treatment. (*Id.* ¶ 23.)

On March 29, 2023, Shaw was transferred to River North Correctional Center. (*Id.* ¶ 24.) Immediately after arriving at River North, he was transported to Twin City Regional Hospital and then to Roanoke Memorial Hospital because of the severity of his condition. (*Id.* ¶ 25.) Shaw remained at Roanoke Memorial Hospital from March 30 through April 18, 2023, where he underwent three surgeries related to his hip condition. (*Id.* ¶ 26.) He has continued to receive treatment for complications related to his condition and is wheelchair-bound with significant difficulty ambulating. (*Id.* ¶¶ 26–27.)

Shaw filed this action on March 12, 2025, asserting two claims. (*Id.* ¶¶ 28–44.) First, he claims that Dr. Wang violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him access to timely and adequate medical care to treat his serious medical needs. (*Id.* ¶¶ 28–39.) Second, Shaw claims Dr. Wang was medically negligent and failed to provide medical care in accordance with the standard of care described in Virginia Code § 8.01-581.20. (*Id.* ¶¶ 40–44.)

On September 19, 2025, Dr. Wang filed a motion to dismiss and strike, arguing that he is entitled to qualified immunity from Shaw's Eighth Amendment claim and that he is entitled to sovereign immunity from Shaw's state-law claim for medical malpractice. (*See* ECF Nos. 21, 22.) He also argues that the facts alleged do not state a claim for gross negligence under Virginia law. (ECF No. 22, at 7–8.) Dr. Wang also moved the court to strike information in the complaint about a prior, unrelated case against Dr. Wang and to strike Shaw's compensatory damages request to the extent it exceeds the statutory maximum under Virginia Code § 8.01-

581.15. (*Id.* at 9.) The same day Dr. Wang filed his motion to dismiss, he also answered the complaint. (*See* ECF No. 23.)

A week later, Dr. Wang filed a motion for partial summary judgment on Shaw's Eighth Amendment claim on the grounds that Shaw did not exhaust his administrative remedies with the Virginia Department of Corrections ("VDOC") before filing suit. (*See* ECF Nos. 25, 26.) In support of that motion, Dr. Wang submitted a declaration from Hannah Abbott, along with a copy of the VDOC grievance procedures and portions of Shaw's grievance records. (*See* ECF No. 26-1.)

Shaw opposed both motions and, in his opposition to the motion for partial summary judgment, urged the court to defer ruling until additional discovery could be taken. (*See* ECF No. 28.) Consistent with Federal Rule of Civil Procedure 56(d) and in the interest of fairness, the court deferred ruling on the summary judgment motion until after a 60-day period of targeted discovery and an evidentiary hearing. (ECF No. 31, at 2.) Judge Memmer held an evidentiary hearing on March 25, 2026, to receive additional evidence pertaining to exhaustion. (*See* ECF No. 34.) The parties also submitted supplemental briefs supporting and opposing the motion for partial summary judgment on May 22, 2026, and June 5, 2026. (ECF Nos. 46, 47.)

On August 3, 2026, Judge Memmer issued her report and recommendation recommending that the court grant Dr. Wang's motion for partial summary judgment. (*See* ECF No. 48.) Shaw timely objected to the report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C) (ECF No. 49), and Dr. Wang responded to his objections (ECF No. 50). Neither party objects to Judge Memmer's recitation of the facts related to exhaustion. (*See* ECF No.

49, at 1–2 (objecting only to the conclusions of law set forth in parts B and C of the report and recommendation); ECF No. 50, at 2–4 (agreeing with Judge Memmer's description of the evidence and asking the court to follow her recommendation).) Accordingly, having reviewed the report and recommendation's summation of the facts and discerning no clear error, the court accepts and adopts the facts as set forth in the report and recommendation (ECF No. 48, at 4–9.)

As Judge Memmer summarized:

> In connection with his motion for partial summary judgment, Dr. Wang offered a declaration from the Institutional Ombudsman for Green Rock, Hannah Abbott. (*See* ECF No. 26-1.) In her declaration, Abbott explains the administrative process for resolving disputes that was in effect for Virginia Department of Corrections ("VDOC") inmates at the time of the events described in the complaint. (*See id.* ¶¶ 4–13.) Abbott's declaration, and the enclosed copy of VDOC Operating Procedure ("OP") 866.1, reveal that the first step in the offender grievance procedure is to attempt to resolve the issue informally, first orally and then by submitting an informal written complaint. (*Id.* ¶¶ 4–5 & Encl. A.) The written complaint must be received by the Institutional Ombudsman or designated staff within 15 days of the incident leading to the complaint. (*Id.* ¶ 5.) Prison staff are to provide a written response on the complaint form within 15 days. (*Id.* ¶ 6 & Encl. A.)
>
> If the inmate is dissatisfied with the response or if staff fail to provide a written response within 15 days, the inmate can submit a regular grievance on the issue within 30 days of the event about which he is complaining. (*Id.* ¶¶ 6–7.) A regular grievance must comply with the requirements of OP 866.1 to be accepted at intake. (*Id.* ¶¶ 8–9.)
>
> A regular grievance that does not meet the filing requirements will be returned to the inmate within two business days of its receipt and will include the reason for the rejection and instructions on how to correct and resubmit the form, where feasible. (*Id.* Encl. A.) If the inmate desires a review of the intake decision, he may send the returned grievance form to the Regional Ombudsman. (*Id.*) Pursuing an intake appeal of a rejected grievance, alone, does not constitute complete

administrative exhaustion but is merely a step toward exhaustion. (*Id.*)

If a regular grievance is accepted for intake, the Facility Unit Head or Assistant Facility Unit Head prepares a Level I response to the grievance within 30 days. (*Id.* ¶ 7 & Encl. A.) An inmate who is not satisfied with the outcome of his Level I review may appeal that decision to Level II. (*Id.* ¶ 10.) Level II reviews are conducted by either the Regional Administrator, the Health Services Director, the Chief of Operations for Classification and Records, or the Superintendent for Education, and those responses must be issued within 20 days. (*Id.* Encl. A.) Level II is the highest level of appeal for most issues. (*Id.* ¶ 11.) For the limited issues subject to Level III appeal, the Chief of Corrections or Director of the VDOC will conduct a final review within 20 days. (*Id.*) If the time period for a response expires before any response is issued, the plaintiff may appeal to the next level. (*Id.*) Grievances must be accepted at intake and then appealed through all levels of available review to satisfy the exhaustion requirement prior to filing suit. (*Id.* ¶ 13.)

According to Abbott's initial review of Green Rock's records, Plaintiff did not file any grievance regarding the medical care he received in March 2023. (*Id.* ¶ 14.) She initially reported that his first medical-related complaint was filed on October 3, 2023. (*See id.* ¶ 14 & Encl. B.)

Plaintiff responded in opposition to Dr. Wang's motion for partial summary judgment arguing that the VDOC waived strict adherence to the exhaustion requirements by addressing on the merits a grievance Plaintiff filed on October 16, 2023, related to his medical care and desire for physical therapy. (*See* ECF No. 28.) Dr. Wang attached the regular grievance that Plaintiff submitted on October 16, 2023 to his reply brief. (*See* ECF No. 30-1.) The grievance does not name Dr. Wang specifically but does state that Plaintiff "currently ha[s] limited mobility & consistent pain as a result of a near fatal infection & bone deterioration" and that the "issues [of which Plaintiff complains] are a direct result of deliberate indifference at Greenrock [sic]." (*Id.*) The October 16, 2023 grievance proceeded through all levels of appeal and was ultimately deemed "unfounded." (ECF No. 26-1, at 27, Encl. B.)

At the evidentiary hearing, the undersigned heard testimony from Abbott and Plaintiff. (*See* ECF No. 41.) In addition to outlining general procedures for filing grievances under OP 866.1 (*see id.* at 14–22), Abbott testified about more specific procedural matters. Abbott testified that under OP 866.1,

VDOC officials have the discretion to excuse an inmate's failure to timely file a grievance if the delay was "beyond [the inmate's] control," such as if it was caused by the inmate's "injury" or "sickness." (*Id.* at 18–19.) Abbott further testified that if an inmate seeks redress for events that occurred at one facility after being transferred to another, the inmate should file a grievance at his or her current facility to be mailed to the prior facility for processing. (*Id.* at 20–21.) Abbott acknowledged that this is the only process available for an inmate to seek redress for events that occurred prior to transfer. (*Id.* at 24.)

Abbott also testified about an emergency grievance Plaintiff filed March 13, 2023, regarding his alleged denial of medical treatment. (*Id.* at 26.) According to Abbott, the emergency grievance was the only document she received regarding Plaintiff's complaints of deliberate indifference while he was at Green Rock. (*Id.*) Abbott also testified that the emergency grievance was denied because Plaintiff's complaints were deemed non emergencies. (*Id.* at 29.) Abbott further testified that, because the emergency grievance was deemed to raise non-emergencies, it was not logged in Plaintiff's grievance file. (*Id.*) On cross examination, Abbott testified that, if Plaintiff wanted to appeal the denial of his emergency grievance, the proper procedure would have been to "[f]ile a regular grievance with [the denial] attached." (*Id.* at 44.) In response to a question from the court, Abbott clarified that, had Plaintiff appealed the denial of his emergency grievance, it would have been logged in his grievance file. (*Id.* at 52–53.)

On cross-examination, Abbott testified about two grievances that Plaintiff filed in August 2023 after being transferred to River North. (*Id.* at 45–47.) The first such grievance raised complaints based on events that occurred at River North on July 26, 2023, and alleged harassment by a correctional officer. (*Id.* at 45–46.) The second such grievance was received by River North personnel on August 28, 2023, and concerned the seizure of certain of Plaintiff's property. (*Id.* at 47.)

In addition to testifying about his medical condition, the treatment he received, and his transfer between various correctional and medical treatment facilities (*see id.* at 69–81), Plaintiff testified about his efforts to file grievances regarding his medical condition. Plaintiff acknowledged that, during his time at Green Rock, the only grievance he filed regarding the medical treatment or lack thereof was his emergency grievance on March 13, 2023. (*Id.* at 74.) Plaintiff explained his failure to file

> additional grievances or appeal the denial of his emergency grievance by noting that his "sole focus [at the time] was on feeling like [he] could function at all." (*Id.*)
>
> Plaintiff also testified about the additional grievance he filed on October 16, 2023, while at River North. (*Id.* at 81–84.) Plaintiff characterized the initial response to his grievance as "[b]asically sa[ying] that [his] problems were irrelevant," and stated that his subsequent appeal was determined to be "unfounded." (*Id.* at 82–83.) When questioned about his reference to "deliberate indifference" to his medical needs at Green Rock in the October 2023 grievance, Plaintiff testified that, while incarcerated at Green Rock, he "felt [that his medical condition] required significantly more help and attention than what was given to [him]." (*Id.* at 82.) Plaintiff also testified that the response to his appeal stated that his "remedies were exhausted," which he interpreted to mean that there was nothing else he could do to seek redress. (*Id.* at 84.)
>
> On cross-examination, Plaintiff acknowledged that he had been incarcerated for fourteen years, and that during that time he had filed various informal and written complaints and grievances. (Id. at 86.) Plaintiff also acknowledged that he had filed grievances unrelated to his medical care in August 2023, while he was housed at River North. (*Id.* at 87–88.)

(ECF No. 48, at 4–9.) With these facts in mind, the court turns to Shaw's objections, which are ripe for adjudication.

## II. STANDARD OF LAW

Summary judgment under Rule 56 "allows a case to be resolved before and without a trial when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 352 (4th Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The court's role in ruling on such a motion is not to assess the truth of any fact alleged or to weigh facts, as would a jury in finding facts, but only to determine whether facts are disputed *and* whether the disputed facts are material." *Id.* (citations omitted).

In deciding a motion for summary judgment, "the court construes all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate if there are genuine disputes of material fact and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, but is appropriate "when the evidence is so one-sided that one party must prevail as a matter of law." *Tekmen*, 55 F.4th at 959.

Additionally, when a matter is referred to a magistrate judge for a report and recommendation, the parties may "serve and file specific, written objections" to the magistrate judge's proposed findings and recommendations within 14 days. 28 U.S.C. § 636(b)(1)(C). A party must object "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). A district court must review *de novo* any part of a report and recommendation to which a party properly objects. 28 U.S.C. § 636(b)(1)(C); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

The district court's reasoning when ruling on the objections need not be elaborate or lengthy, but it must provide a specific rationale that permits meaningful appellate review. *See, e.g., United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009).

A district court is not required to review any issue *de novo* when no party objects. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983). Instead, a district court reviews any part of a report and recommendation not properly objected to for clear error. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Clear error means that a court, after "reviewing . . . the entire evidence[,] is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see FTC v. Ross*, 743 F.3d 886, 894 (4th Cir. 2014) (noting a factual finding based on the resolution of conflicting evidence is entitled to deference under the clear-error standard).

## III. ANALYSIS

The PLRA requires inmates to exhaust all available remedies before filing lawsuits that challenge the conditions of their confinement. *Ramirez v. Collier*, 595 U.S. 411, 421 (2022); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to any prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion under the PLRA is mandatory, and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). To satisfy the exhaustion requirement, prisoners much complete the administrative review process set forth by prison grievance procedures. *Id.* at 218 (quoting *Woodford*, 548 U.S. at 88).

Therefore, what is required to comply with the grievance procedures varies "from system to system and claim to claim." *Id.* And because "the exhaustion requirement hinges on the 'availability' of administrative remedies," inmates need only exhaust available administrative remedies, not remedies which are "unavailable." *Ross v. Blake*, 578 U.S. 632, 642 (2016). Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

In her report and recommendation, Judge Memmer's analysis of the facts and applicable law led her to conclude that: (A) Shaw's October 16, 2023 regular grievance raised the issue of Dr. Wang's alleged deliberate indifference; (B) Dr. Wang's failure-to-exhaust defense was not waived; and (C) Shaw had not established that unexhausted remedies were unavailable to him.

Shaw lodges three objections to Judge Memmer's report and recommendation. (*See* ECF No. 49, at 2–11.) First, he argues that Dr. Wang did not carry his burden to prove non-exhaustion. (*Id.* at 2–3.) Next, he asserts that VDOC waived any procedural defect in Shaw's grievance by processing it without raising the defect. (*Id.* at 3–6.) Third, Shaw contends that any additional administrative procedures were rendered unavailable by VDOC's acceptance of his grievance. (*Id.* at 7–11.)

### A. <u>Objection 1: Dr. Wang's Burden of Proof</u>

"Failure to exhaust is an affirmative defense for which the [defendant] bear[s] the burden of proof." *Gowen v. Winfield*, 130 F.4th 162, 176 (4th Cir. 2025) (citing *Jones*, 549 U.S. at 216). Accordingly, "[t]he key question in determining whether summary judgment is

appropriate is . . . whether the movant has met his burden of showing that no genuine dispute exists as to exhaustion of administrative remedies." *Gifford v. W. Va. Div. of Corr. & Rehab.*, No. 2:23-CV-00332, 2023 WL 8241554, at *8 (S.D.W. Va. Nov. 28, 2023).

Shaw argues that Dr. Wang has not established the failure to exhaust as a matter of law. (ECF No. 49, at 2–3.) He contends that Dr. Wang's position requires the court to draw the unfavorable inference that, even though VDOC accepted the grievance and provided a final exhaustion notice, he was required to file a separate grievance at Green Rock despite no evidence that Shaw could have initiated the Green Rock review process himself. (*Id.*) Dr. Wang, on the other hand, emphasizes that the grievance Shaw did file was untimely and there was no basis for allowing him additional time to file. (ECF No. 50, at 7–8.)

As set forth below, the court finds that Dr. Wang has carried his burden to show that no reasonable jury would find that Shaw exhausted available administrative remedies before filing his § 1983 claim. Shaw has thus not demonstrated that there is any genuine issue of material fact precluding summary judgment.

### B. Objection 2: Waiver of Procedural Defects

Shaw objects to Judge Memmer's determination that VDOC did not waive the untimeliness of Shaw's grievance. (ECF No. 49, at 3–6.)

Under OP § 866.1(III)(B)(5), an inmate must submit a regular grievance within 30 days of the incident or discovery of the incident which the grievance concerns. (ECF No. 26-1, at 10.) And per OP § 866.1(III)(C)(5), "[i]f the *Regular Grievance* does not meet the intake criteria, staff has two working days from receipt to complete the *Intake* section on the *Regular Grievance*

866_F1, indicating the reason for rejection, and to return the *Regular Grievance* to the offender." (*Id.* at 11.)

Here, Dr. Wang's alleged deliberate indifference to Shaw's serious medical condition occurred between March 9 and March 29, 2023. (ECF No. 1 ¶¶ 6–24.) It is undisputed that Shaw did not submit a timely grievance addressing Dr. Wang's allegedly unconstitutional treatment of him. Instead, the only complaint and grievance conceivably addressing Dr. Wang's deliberate indifference was filed roughly six months *after* the events giving rise to his claim. Specifically, on September 27, 2023, Shaw submitted an informal complaint stating:

> I have serious medical issues & constant pain due to a severe infection and damage to my back. I'm supposed to be receiving physical therapy w/ access to resistance bands 3x a week as well as bloodwork to monitor the infection. Furthermore, Roanoke Memorial refused to perform a surgery that the ortho spine surgeon at MCU stated I NEEDED citing incorrect CT scans and the fact that CRMH only does emergency "non elective" surgery on DOC inmates. My surgery is not elective as the damage causes immense pain & limits me. Please make my health a priority. These issues speak to an indifference towards continued care.

(ECF No. 37-7, at 1 (emphasis added).) In response, Shaw was told to "submit a sick call request, to be seen for pain if needed" and that "we are working on a therapy contract." (*Id.*)

On October 16, 2023, Shaw submitted his regular grievance. It is undisputed that VDOC did not reject Shaw's October 16, 2023 grievance at intake for its untimeliness or for any other reason. His grievance explained his "limited mobility" and "constant pain" stemming from "a hear fatal infection & bone deterioration" and asked that he receive his scheduled physical therapy and have regular meetings with the doctor at River North. (ECF No. 30-1, at 1.) He further explained that his condition "is one that will only get worse w/o

medical intervention & PT is a must" in order to retain his limited mobility. (*Id.*) He stated that his severe, verified health issues "continue to be overlooked" and lamented that "nothing is being done." (*Id.*) Shaw's "Suggested Remedy" was "regular access to PT & prescheduled MD meetings bi-weekly to discuss progress & surgical options or medical transfer to a facility w/ on site PT in the MCU region so I can have the surgery I need in order to regain mobility & stop further damage." (*Id.*) The attachment to his regular grievance reiterated his concerns about surgery and incorrect CT scans and not getting adequate time with the doctor at River North. (*Id.* at 2.) The attachment also stated, "These issues are a direct result of deliberate indifference at Greenrock & now I'm left with permanent scars & pain as well as serious physical limitations." (*Id.*)

The response to his grievance discussed only the physical therapy and medical-attention issues related to his treatment at River North. (ECF No. 37-1, at 1.) It did not mention anything about his time or treatment at Green Rock. (*See id.*) When Shaw appealed the decision, he stated only that:

> After multiple discussions w/ nurses, it has been noted that my specific PT needs can & should still be met i.e. use of resistance bands that must be done in medical. I sign a masterpass list & do not get called on numerous occasions including several of the dates outlined in this response. I am not in control of RNCC's PT contracts & regardless of that, my health & wellbeing should not be affected because of forces outside my control. PT is not a "recommendation" it is NEEDED. The response states that off site PT is conducted yet I've received none. The signing of a masterpass sheet shows recognition on RNCC's part that I'm to be seen, yet I'm not.

(*Id.* at 2.)

The question that Shaw's objection asks the court to consider is whether, by accepting and responding to Shaw's October 16, 2023 grievance as it did, VDOC waived any argument that his presentation of the Green Rock deliberate-indifference issue was untimely. The Fourth Circuit has not yet answered the question of whether a corrections department can waive procedural defects by failing to reject a grievance at intake based on such defects. And although Dr. Wang points out that higher courts have repeatedly emphasized the need for *proper* compliance with prison grievance procedures, including deadlines, the court agrees with Judge Memmer's conclusion that the Fourth Circuit would likely follow the Second, Third, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits in holding a prison grievance department's resolution of a procedurally defective grievance on the merits can satisfy the exhaustion requirement.[1]

Yet the question Shaw's objection raises does not resolve the larger issue of whether any reasonable jury would find that he fully exhausted administrative remedies before filing this action. This is because, even if the court accepts that it is possible for VDOC to waive a

[1] *See Hill v. Curcione,* 657 F.3d 116, 125 (2d Cir.2011) ("[T]he exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority."); *Rinaldi v. United States*, 904 F.3d 257, 271 (3d Cir. 2018) ("[W]hen an inmate's allegations have been fully examined on the merits and at the highest level, they are, in fact, exhausted.") (cleaned up); *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) ("[T]he State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim.."); *Conyers v. Abitz,* 416 F.3d 580, 584 (7th Cir.2005) ("Failure to comply with administrative deadlines dooms the claim except where the institution treats the filing as timely and resolves it on the merits."); *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) ("The benefits of exhaustion . . . are fully realized when an inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits, even if the decision-maker could have declined to reach the merits because of one or more procedural deficiencies."); *Ross v. County of Bernalillo,* 365 F.3d 1181 (10th Cir.2004), *abrogated on other grounds by Jones v. Bock,* 549 U.S. 199 (2007) ("If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."); *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1215 (11th Cir. 2015) ("[A] prisoner has exhausted his administrative remedies when prison officials decide a procedurally flawed grievance on the merits.").

timeliness defect by deciding an untimely grievance on the merits, Shaw still failed to completely fulfill the exhaustion requirement for his claim against Dr. Wang.

Although the court agrees with Judge Memmer that a reasonable jury could find that Shaw's October 16, 2023 grievance sufficiently raised the issue of Dr. Wang's deliberate indifference at Green Rock, this is not the end of the inquiry. To fully exhaust administrative remedies, an issue must be grieved through all available levels of appeal. (ECF No. 26-1, at 16 ("The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process ***and appealed***, without satisfactory resolution of the issue." (emphasis added)); *see also Jones*, 549 U.S. at 218 ("[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself.") (quoting *Woodford*, 548 U.S. at 88). Thus, to completely exhaust administrative remedies related to his deliberate-indifference claim, Shaw must have raised the issues underlying that claim not only in a regular grievance, but through all available levels of appeal. The undisputed evidence in the record establishes that he failed to do so.

Here, even to the extent Shaw meant to present his concerns about his Green Rock treatment for review in his October 16, 2023 grievance, the Level I response addressed only Shaw's concerns relating to his physical therapy, updated CT scans, and medical visits at River North. (ECF No. 37-1, at 1.) Yet Shaw did not raise any concern over the failure to address the Green Rock deliberate-indifference claim in his appeal to Level II. (*See id.* at 2.) Shaw's appeal complained only that he still was not receiving adequate PT and that he was not being called to medical each time he was scheduled to go. (*Id.*)

Although Shaw insists that once a grievance is accepted, "VDOC unilaterally decided how to review, process, and investigate Shaw's grievance" and that "[t]he PLRA does not require or permit Shaw to control what VDOC chooses to investigate or how it chooses to respond after accepting his grievance," this is not accurate. VDOC, not the PLRA, sets forth the procedures an inmate must follow to sufficiently exhaust administrative remedies. *See Jones*, 549 U.S. at 218. And OP 866.1(IV)(B)(1) details precisely how an aggrieved inmate can notify the department that his or her grievance was not adequately addressed by the Level I response:

> If the offender does not agree with the grievance response, disposition of the grievance, or the remedy, the offender may submit their appeal by providing the below information in the designated area on the *Offender Grievance Response - Level I*:
>
> a. Explaining what piece (the response, the disposition, or the remedy) is being appealed
>
> b. Identifying how the institution's determination does not address the issue
>
> c. Suggesting a remedy
>
> d. Signing and dating the appeal section on the *Offender Grievance Response - Level I*.

(ECF No. 26-1, at 14.) In his appeal, Shaw could have, but did not, identify how the Level I response failed to address his concerns over Dr. Wang's treatment. Therefore, he did not fully exhaust his claim for Dr. Wang's alleged deliberate indifference before filing this action.

Other courts have found that when multiple issues are raised in a single grievance but only some proceed through all available appeals, only those issues that have proceeded through all available steps in the grievance appeal process are exhausted.[2] *See, e.g.*, *Everett v. Francis*, No.

[2] The court does note that, for Virginia inmates, raising multiple claims in a single grievance is grounds for rejection of that grievance at intake. (*See* OP 866.1(III)(B)(1) ("A completed *Regular Grievance* 866_F1 should contain a single grievable issue."). However, just as the court finds VDOC could waive a timeliness defect by resolving a claim on the merits, it similarly finds that VDOC could have waived the multiple-issues procedural defect by resolving each issue on the merits had Shaw pursued the deliberate indifference he experienced at Green Rock in his appeal of the October 16, 2023 grievance decision.

CIV.A. 5:07CV135, 2010 WL 1490445, at *4 (N.D.W. Va. Mar. 22, 2010), *report and recommendation adopted*, No. CIV.A. 5:07CV135, 2010 WL 1490479 (N.D.W. Va. Apr. 13, 2010), *aff'd*, 390 F. App'x 266 (4th Cir. 2010) (finding plaintiff had not exhausted administrative remedies for issues raised in a written complaint but not appealed to the regional director even though other issues proceeded through all levels of appeal); *Collins v. LeMaster*, No. CV 5:15-05576, 2016 WL 675675, at *8 (S.D.W. Va. Jan. 25, 2016), *report and recommendation adopted*, No. 5:15-CV-05576, 2016 WL 661590 (S.D.W. Va. Feb. 18, 2016) (finding claims that were mentioned in an attachment to the plaintiff's request for administrative remedy and mentioned in one request for appeal could not be exhausted because "claims are precluded if not raised at all three levels of the administrative remedy process").

The fact that Shaw received a notice indicating that "[a]ll administrative remedies have been exhausted ***regarding this issue***" (ECF No. 37-1, at 4) does not exhaust issues that were raised in the grievance but not pursued on appeal. The fact that Shaw fully exhausted other issues he raised in the same grievance does not excuse his failure to fully exhaust his Green Rock deliberate-indifference claim. For this reason, regardless of whether VDOC waived the timeliness issue, no reasonable jury could conclude that Shaw fully exhausted administrative remedies relating to the § 1983 claim he raises in this suit.

### C. Objection 3: Availability of Additional Procedures

In his final objection, Shaw argues that he could not have presented these issues to Green Rock for review himself after he was transferred to River North and so any remedies that should have been raised before the Green Rock grievance department were unavailable to him. But this argument does not excuse his failure to fully exhaust administrative remedies

for his deliberate-indifference claim against Dr. Wang at either institution. It is well-established that "[e]xhaustion of administrative remedies is mandatory, even where the inmate claims that exhaustion would be futile." *Reynolds v. Doe*, 431 F. App'x 221, 222 (4th Cir. 2011) (citing *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001).

For this reason, Shaw's final objection does not raise a genuine issue of material fact relating to exhaustion. However unfair and unfortunate Shaw's situation, Dr. Wang is entitled to partial summary judgment on exhaustion grounds.

## IV. CONCLUSION

Based on its review of the parties' submissions and the report and recommendation of Judge Memmer and for the reasons set forth above, the court will overrule Shaw's objections to the report and recommendation (ECF No. 49), adopt the report and recommendation (ECF No. 48) **in part** consistent with the determinations above, grant Dr. Wang's motion for partial summary judgment (ECF No. 25) and award summary judgment in Dr. Wang's favor on Shaw's claim under 42 U.S.C. § 1983 based on his failure to exhaust. Because Shaw's only claim over which this court has original jurisdiction has been resolved, the court will also decline to exercise supplemental jurisdiction over his remaining state-law negligence claim. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Shanaghan v. Cahill*, 58 F.3d 106, 109–10 (4th Cir. 1995).

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 30th day of September, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE